IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN QUIRKE, | ) NO.: |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JLG INDUSTRIES, INC., a corporation, | ) |
| | ) |
| Defendant. | ) |

COMPLAINT

AND NOW, comes the plaintiff, KEVIN QUIRKE, by his attorneys JOHN A. CAPUTO & ASSOCIATES and complains upon a cause of action whereof the following is a statement:

1) Plaintiff KEVIN QUIRKE is an adult individual who is a citizen of the Republic of Ireland.

2) Defendant JLG INDUSTRIES, INC., herein "JLG", is a for-profit business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered address in Pennsylvania and principal places of business located at 450 Sunnyside Road, Bedford, Bedford County, Pennsylvania 15522 and 441 Weber Lane, Bedford, Bedford County, Pennsylvania 15522, and at all times material hereto was engaged in the business of designing, manufacturing, assembling, and selling aerial work platforms, telehandlers and telescopic boom lifts among other equipment.

1

3) This Honorable Court has jurisdiction of the subject matter of this controversy pursuant to Title 28, Section 1332(a)(2) of the United States Code based on diversity of citizenship of the parties whereas the plaintiff is a resident of and domiciled in the Republic of Ireland and the defendant is a Pennsylvania corporation which maintains principal places of business in Pennsylvania at 450 Sunnyside Road, Bedford, Bedford County Pennsylvania 15522 and 441 Weber Lane, Bedford, Bedford County, Pennsylvania 15522 among others; and the amount in controversy exceeds the jurisdictional threshold limit of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of interest and costs.

4) The forum provided by the United States District Court for the Western District of Pennsylvania is the proper venue for this civil action pursuant to Title 28, Section 1391(b)(1) because defendant JLG maintains two (2) principal places of business in Bedford County where it can be served with process.

5) At all times material hereto, defendant JLG acted by and through its authorized agents, servants and employees who were then and there acting within the scope of their authority and on behalf of the business of said defendant.

6) The events causing personal injuries to the plaintiff, as hereinafter set forth, occurred on March 13, 2018 at approximately 1:00 P.M. at 12 Leslie Street, in Toronto, Ontario, Canada, hereinafter referred to as the subject incident and subject location respectively.

7) Before the subject incident, defendant JLG designed, manufactured, assembled, and sold in the ordinary course of its business a Model 860SJ Boom Lift, hereinafter "subject boom lift", to Sunbelt Rentals. The subject boom lift was used in service for approximately 244 hours before the subject incident without substantial change and as it was intended to be used.

8) Plaintiff believes and avers that the subject boom lift left the possession of defendant JLG when it was sold at some time in the four (4) year period before the date of filing of this Complaint.

9) Plaintiff believes and avers that the subject boom lift was manufactured and/or assembled at one of the assembly plants of defendant JLG located in Pennsylvania.

10) The subject boom lift contained a boom assembly consisting in part of three masts. The lowest mast section was held in position by a hydraulic ram, and two other masts telescoped out of it to extend the boom. The boom extended and retracted by a cable system housed within the closed section of the boom. Unknown to Sunbelt Rentals and users of the subject boom lift, the cable system was installed and assembled improperly and not in accordance with the design criteria and assembly instructions of defendant JLG. The improper assembly of the cables caused a crisscross routing of the cables resulting in the extended cables rubbing against each other and the telescopic cylinders during the subject boom lift's time in service. The assembly of the cables caused the cables to degrade and deteriorate over the period of use of the boom lift, and to break apart at the time of and resulting in the subject incident.

11) On March 13, 2018 at the subject location, plaintiff, while employed by Sunbelt Rentals, was lawfully and carefully using and operating the subject boom lift as it was intended to be used. At said time and place, plaintiff was standing on the work platform positioned at approximately eighty-six (86) feet above the ground. At the time of the subject incident, the degraded and deteriorated cables broke apart causing a sudden and unexpected retraction of the boom whereby the two forward most telescopic masts telescoped back into the lowest portion of the boom held firm by the hydraulic ram causing the work platform to rapidly descend by gravitational force, without any device retarding its descent, and stop suddenly with great force when the work platform struck the top of the lowest boom mast at about forty-five (45) feet above ground. The sudden stop of the descent of the work platform caused plaintiff to strike the platform and the railings which were part of the platform, resulting in serious and severe injuries, some of which will be permanent in nature.

12) Plaintiff believes and avers, based on an inspection after the subject event, that the sudden and unexpected fall and descent of the work platform was caused by the unexpected and unintended degradation and breaking of the cables, all the result of the aforementioned improper assembly.

13) As a result of the defective and dangerous condition of the subject boom lift as manufactured, assembled, and sold, and the conduct of defendant, through its agents and employees, plaintiff suffered the following injuries:

    a) Fractures of the right ankle which included the medial malleolus and a syndesmotic ligament injury.

      b)      Injury to the soft tissues and nerves of the left knee.

      c)      Comminuted fracture of the right mandible at the chin.

      d)      Fractures of left and right mandibles at both temporomandibular joints.

      e)      Soft tissue and disc injuries to both right and left temporomandibular joints.

      f)      Fractured teeth and dental root damage.

      g)      Deep laceration of the tissues of the neck under the chin and below the lower lip.

      h)      Soft tissue injuries of the discs and joints of the spine.

14)      As a further direct result of the injuries and conduct of the defendant, plaintiff has been damaged as follows:

      a)      He has lost earnings and will continue to lose earnings.

      b)      His earning capacity has been reduced or permanently impaired.

      c)      He has been and will in the future be deprived of the ordinary pleasures of life.

      d)      He has been and will in the future be required to undergo numerous surgical procedures.

      e)      He has been and will be in the future be required to spend large sums for medical and surgical attention, hospital care, medicines, drugs, and other appliances and treatments.

      f)      He has endured and will endure in the future great pain, suffering, inconvenience, mental anguish and embarrassment.

      g)      He has suffered and will in the future suffer an impairment of his health, vitality, and capacity for the normal activities.

      h)      He has been disfigured.

## I. STRICT LIABILITY

15)    The injuries and damages were caused by the defectively designed, manufactured and assembled subject boom lift which was unreasonably dangerous to users and consumers in general, and to plaintiff in particular, and which defective condition existed at the time defendant corporation parted with possession thereof, thereby imposing strict liability on the defendant corporation under Restatement of Torts, Second, Section 402A because:

      a)      The subject boom lift contained a cable system that allowed the cables to degrade by rubbing together and against the boom during normal use and to fail.

      b)      The subject boom lift contained an improperly assembled cable system.

      c)      The subject boom lift was assembled and sold without having been adequately inspected to determine its hazards and dangers, or alternatively, was assembled and sold knowing the same.

      d)      The subject boom lift was designed with dangerous elements that allowed the cable system to fail.

## II. NEGLIGENCE

16) The injuries and damages hereinafter set forth were caused by and were the direct, legal and proximate result of the negligence, carelessness, and/or gross negligence, recklessness or wanton conduct of defendant in the following particulars:

- a) In assembling the subject boom lift with a cable system that allowed the cables to crisscross and wear against each other and part of the boom.

- b) In improperly installing the cables and not following design criteria and assembly protocols.

- c) In failing to establish and/or follow adequate design objectives, design criteria and quality control methods which would have provided a product with properly assembled boom cables.

- d) In manufacturing and assembling the subject boom lift while failing to follow procedures and methods in conformity with the prevailing state of science, engineering, industry custom and its own private assembly protocols.

- e) In failing to carefully inspect the subject lift boom during and after its assembly to determine if the cables were installed properly.

## III. BREACH OF WARRANTIES

17) The subject boom lift was sold and distributed by defendant to be used for all its reasonably foreseeable purposes and plaintiff was a foreseeable user.

18) At all times material hereto, defendant, as a seller, was a merchant with respect to the subject boom lift.

19) As a foreseeable user and third-party beneficiary of the purchase of the subject boom lift, plaintiff relied upon defendant's implied warranty of merchantable quality and fitness for the purpose for which it made the subject boom lift, which warranty was extended by defendant. Plaintiff believes and avers that the defendant provided an express warranty with the sale of the subject boom lift that was breached. However, plaintiff has not been provided with any express written warranty, but demands a copy thereof.

20) The subject boom lift was purchased from defendant for the purpose for which it was made.

21) As a foreseeable user and third-party beneficiary to the purchase of the subject boom lift, plaintiff relied upon defendant's skill and judgment to furnish a suitable boom lift to meet its particular purpose, which warranty of fitness for the particular purpose had been extended by defendant.

22) The subject boom lift as assembled, inspected and sold did not comply with nor conform to the aforesaid warranties but, to the contrary was dangerous and unsafe for human use.

8

23) By reason of the foregoing breaches of warranties, the plaintiff has sustained the damages hereinabove set forth.

WHEREFORE, plaintiff claims compensatory damages in an amount exceeding the sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS exclusive of interest and costs as well as punitive damages in a sum calculated to deter defendant from further disregard for the health and safety of users and to admonish and require an adequate response for the conduct causing the injuries and damages inflicted upon plaintiff.

A JURY TRIAL IS DEMANDED

JOHN A. CAPUTO & ASSOCIATES

BY: *John A. Caputo* (signature)
John A. Caputo
Attorney for Plaintiff
Attorney ID# 16370
jac@jcaputo.com

310 Grant Street, 820 Grant Bldg.
Pittsburgh, PA 15219
(412) 391-4990

## VERIFICATION

I, KEVIN QUIRKE, have read the foregoing COMPLAINT. The factual information therein which was provided by me to my attorney is true and correct to the best of my personal knowledge, information or belief.

Any other contents of the COMPLAINT, including additional factual information, legal theories or conclusions of law, have been prepared by my attorneys, who have signed the pleading, and are based upon their investigation and analysis of information available to them and the applicable law.

I make this statement subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

*Kevin Quirke*
KEVIN QUIRKE

DATED:   April 22, 2019